IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF NEW YORK


\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

UNITED STATES OF AMERICA,

|  | Criminal Action No. |
| v. | 08-CR-676 (NAM) |

MICHAEL C. WOODS,
GAETAN DINELLE,


Defendants.


\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*


## TRIAL MEMORANDUM OF THE
## UNITED STATES OF AMERICA




Dated: July 13, 2015          RICHARD S. HARTUNIAN
United States Attorney


By:     _/s/ Carl G. Eurenius_
Carl G. Eurenius
Assistant United States Attorney
Bar Roll No. 511746

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | Criminal No.    5:08-CR-676 (NAM) |
| | ) | |
| **v.** | ) | **Government's Trial Memorandum** |
| | ) | |
| **MICHAEL C. WOODS and** | ) | |
| **GAETAN DINELLE,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**TRIAL MEMORANDUM**

**I.  Statement of the Case**

The defendants Michael C. Woods and Gaetan Dinelle are each charged in all counts of a nine count indictment. Count 1 charges the defendants with conspiracy to possess with intent to distribute and to distribute 1000 kilograms or more of marijuana, in violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(A).  Count 2 charges the defendants with conspiracy to import into the United States from Canada 1000 kilograms or more of marijuana, in violation of Title 21, United States Code, Sections 952, 960(a)(1),(b)(1)(G) and 963. Count 3 charges the defendants with conspiracy to distribute 1000 kilograms or more of marijuana in Canada, knowing or intending that the marijuana they distributed in Canada would thereafter be unlawfully imported into the United States, in violation of Title 21, United States Code, Sections 959, 960(b)(1)(G), and 963.  Counts 4 through 8 charge defendants with distribution and aiding and abetting the distribution of marijuana, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C)[Counts 5, 6, and 7]; (b)(1)(D)[Counts 4 and 8], and Title 18, United States Code, Section 2.  Count 9 charges the defendants with engaging in a criminal enterprise, in violation of Title 21, United States Code, Section 848(a) and (c), and further alleges the defendants were principal administrators, organizers, and leaders of an enterprise which received

more than $10,000,000 in a calendar year, in violation of Title 21, United States Code, Section 848(a) and (b). The indictment also contains a forfeiture allegation.

The defendants are detained.  The trial is currently scheduled for July 27, 2015, and the government anticipates that it will take approximately two weeks.

.

## II.  Statement of Facts

The charges arise from the defendants' membership in and leadership of an organization that obtained marijuana in Canada and smuggled it into the United States, thereafter using couriers to deliver the marijuana to buyers throughout the eastern U.S. and return with the marijuana proceeds. A detailed explanation of how the conspiracy operated and roles of the those involved may be found at the Manner and Means section of Indictment 5:08 CR 676 (NAM).

It is anticipated that approximately eight cooperating witnesses  (hereafter generally referred to as CW #1 through CW #8)  will testify that they worked in various roles for the Woods drug trafficking organization (Woods DTO) between April 2005 and February 2008. Cooperating Witness #1 is expected to testify that he/she held a trusted position in the organization and performed several key roles for the organization, which roles included (at the direction of Woods and/or Dinelle) picking up and transporting couriers to waiting "load vehicles," the trunks of which had already been loaded with 100 to 120 pounds of the marijuana, so the couriers could embark on their marijuana deliveries, or "runs," meeting the couriers when they returned from making marijuana "runs," taking the marijuana proceeds from the couriers, occasionally paying the couriers a portion of the proceeds, and bringing the marijuana proceeds to Dinelle and/or Woods in Canada.  Cooperating Witness #1 is also expected to testify about other ways in which he/she played a role in the Woods DTO, including the times that he/she, at

the direction of Woods, he/she purchased, with money given to him/her by Woods, large, non-descript American made cars (with large trunks) for the purpose of Woods using them as Woods DTO "load vehicles" to deliver marijuana, and CW #1 registered these vehicles in the names of friends of CW #1's who were not involved in the organization's criminal activity.  Cooperating defendants #2 through #7 are expected to testify that they were couriers for the Woods DTO, recruited by Woods or Dinelle to drive "load vehicles" from a location on the Akwesasne Mohawk Indian Reservation (AMIR) to Woods DTO buyers in various locations around the eastern United States including Boston, Washington D.C., middle Pennsylvania, and Richmond, Virginia.  These couriers will testify about the marijuana "run" or "runs" they made for Woods and/or Dinelle and the large sums of marijuana proceeds they received from the Woods DTO buyers which they drove back to the AMIR.

Cooperating Witness #8 is expected to testify that he/she acted as a scout car for the couriers transporting marijuana from the AMIR, escorting the couriers until they had driven what was deemed to be a safe distance on their delivery routes.  Cooperating Witnesses #1-#8 will testify that they were paid by Woods and/or Dinelle for their roles in the Woods DTO, and that they continued in their roles as couriers, typically, until they were apprehended by law enforcement.

Cooperating Witness #9 is expected to testify that he was a very frequent purchase of large-weights of marijuana from the Woods DTO. From 2005 until the summer of 2007, CW #9 is expected to testify that he purchased at least 6,000 pounds of marijuana, for which he paid approximately $15,000,000 to various couriers, including but not limited to Dinelle, until Dinelle was stopped by law enforcement in June 2006.  CW #9 is further expected to testify that he communicated on a very frequent basis with Woods and/or Dinelle regarding marijuana

negotiations and deliveries.  CW #9 is further expected to testify that Woods provided him with updates regarding couriers and deliveries, including details when Woods DTO couriers were stopped by law enforcement and money or drugs were seized, and that Woods provided him with cell phones for the purpose of making these communications. The government is expected to introduce written records of text messages between CW #9 and Woods from around 2008 which communications were made during and in furtherance of the Woods DTO conspiracy.

The government intends to offer evidence of several seizures related to the Woods DTO, including the following: (1) a June 2, 2006, seizure of 104 pounds of marijuana from Gaetan Dinelle, (2) a February 24, 2007, seizure of 120 pounds of marijuana from Noel Piette, (3) an April 13, 2007, seizure of $100,060 in marijuana proceeds from Byrce Cumming, (4) an April 19, 2007, seizure of $596,000 in marijuana proceeds and 100 pounds of marijuana from Michael Harris and William Scott Morgan, (5) a September 7, 2007, seizure of $58,400 from Barrett Waggar, (6) an October 31, 2007, seizure of $99,910 of marijuana proceeds from Joanna Hyderman, (7) a November 2, 2007, seizure of 130 pounds of marijuana from Michelle Daniluck and Amanda Pond, (8) a January 4, 2008, seizure of 111 pounds of marijuana from Jeana MacDonald, (9) on February 5, 2008, a seizure of $170,800 of marijuana proceeds from Chantal and Mark Allaire, (10) a February 24, 2008, seizure of 120 pounds of marijuana from Cassie O'Bryne, Kayla Snyder, and Kendra Theoret.  The government will introduce consensually recorded push-to-talk phone calls between the courier and Dinelle and Woods in seizure (4), and between the couriers and Dinelle in seizure (7).

## III.  Statement of the Law

### 1.  Conspiracy to violate various federal drug statutes (Counts 1, 2, and 3)

Counts 1, 2, and 3 of the superseding indictment charges the defendants with various conspiracies (all involving 1,000 kilograms or more of marijuana) – a conspiracy to distribute and possess with the intent to distribute (Count 1), a conspiracy to import into the United States from Canada (Count 2), and a conspiracy to distribute in Canada, knowing or intending that the marijuana distributed in Canada would be imported into the United States (Count 3). The common elements of these conspiracy offenses are as follows:

First, that the conspiracy, agreement, or understanding between two or more persons to join together to accomplish some unlawful purpose as described in Counts 1, 2, and 3 of Superseding Indictment 08-CR-676, was formed, reached, or entered into by two or more persons;

Second, that at some time during the existence or life of the conspiracy, agreement, or understanding, the defendant knew the purpose of the agreement, and then deliberately joined the conspiracy, agreement, or understanding;

Third, the participation of the defendant in the conspiracy and the acts of others in furtherance of the conspiracy and reasonably foreseeable to the defendant involved 1,000 kilograms or more of marijuana.

Conspiracy is a separate and distinct crime from the substantive offenses which are the objects of the conspiracies. *United States v. Pickney*, 85 F.3d 4, 8 (2d Cir. 1996). "It is the unlawful agreement itself which constitutes the crime." *United States v. Martino*, 759 F.2d 998, 1004 (2d Cir. 1985); *see Iannelli v. United States*, 420 U.S. 770, 770 n.10 (1975). The government does not have to prove the substantive offense in order to prove the conspiracy. *Pickney*, 85 F.3d at 8. Further, the United States does not have to prove the commission of an overt act in furtherance of a drug conspiracy. *United States v. Anderson*, 747 F.3d 51, 60 n.7 (2d

Cir. 2014).  The central concern in a conspiracy case is whether the defendant agreed with at least one other person to commit the target offense.  *United States v. Rosa*, 17 F.3d 1531, 1544 (2d Cir. 1994).

The government may prove the existence of a conspiracy and a defendant's knowing participation in it entirely through circumstantial evidence.  *Glasser v. United States*, 315 U.S. 60, 80 (1942); *United States v. Huezo*, 546 F.3d 174, 180 (2d Cir. 2008).  A conspiracy is "by its very nature a secretive operation."  *United States v. Provenzano*, 615 F.2d 37, 45 (2d Cir. 1980).  Thus, the informal agreement present in most conspiracies must frequently be proven by circumstantial evidence.  *Martino*, 759 F.2d at 1002-04.  Such evidence may include "a defendant's association with conspirators in furtherance of the conspiracy; his presence at critical stages of the conspiracy that cannot be explained by happenstance or his possession of items that are of essential significance to the conspiracy."  *Anderson*, 747 F.3d at 60.  Seemingly innocent acts, viewed in light of all surrounding circumstances, may justify an inference of participation in it.  *United States v. Mariani*, 725 F.2d 862, 865-66 (2d Cir. 1984).  To be sufficient, such evidence "need not have excluded every possible hypothesis of innocence."  *United States v. Soto,* 716 F.2d 989, 993 (2d Cir. 1983).

Each conspirator need not know all the details of the conspiracy, the identity or number of his co-conspirators, as long as that conspirator understands the general nature of the conspiracy.  *Rosa*, 17 F.3d at 1543.  Similarly, the government does not have to prove the identity or number of co-conspirators.  *Rogers v. United States*, 340 U.S. 367, 375 (1951).  The government must prove that the defendant knew of the conspiracy and joined it with the intent to commit the crime or crimes which were the object of the conspiracy.  *Ceballos*, 340 F.3d at 123 (holding that the defendant must have the affirmative intent to make the conspiracy succeed).

Here, as to Count 1, the underlying substantive offense is possession with the intent to distribute marijuana and distribution of marijuana. Therefore, the government must establish that the defendant agreed "knowingly or intentionally to possess with intent to . . . distribute or to distribute a controlled substance." 21 U.S.C. § 841(a)(1)[1]; *United States v. Torres*, 604 F.3d 58, 65 (2d Cir. 2010). For Count 2, the underlying substantive offense is the importation of marijuana into the United States from Canada. Therefore, the government must establish both that the defendant agreed to possess with intent to distribute and distribute marijuana and that the defendant agreed knowingly or intentionally to import the marijuana into the United States from a place outside thereof. 21 U.S.C. § 952(a); see also *United States v. Vasquez*, 677 F.3d 685, 695 (5th. Cir. 2012). For Count 3, the underlying substantive offense is the distribution of marijuana with the knowledge or intent that the marijuana would be unlawfully imported into the United States. Therefore, the government must establish that the defendant agreed to distribute a controlled substance with actual knowledge or intending that it will thereafter be unlawfully imported into the United States." 21 U.S.C. § 959(a)(1) and (2); *United States v. Romero-Padilla*, 583 F.3d 126 (2d. Cir. 2009).

Even a single act may suffice to establish membership in a conspiracy if it justifies an inference of the requisite knowledge. *Anderson*, 747 F.3d at 61. A defendant once found to be a member of a conspiracy, whatever his level of participation, may be criminally responsible for acts of which he is unaware by persons whose existence is unknown to him, if done as part of the conspiratorial design. *United States v. Cirillo*, 468 F.2d 1233, 1239 (2d Cir. 1972). Evidence of

---

[1] Of course, the government will also have to prove the defendants knowingly or intentionally possessed with intent to distribute or to distributed a controlled substance to be found guilty of the substantive counts of the superseding indictment (Counts 4 through 8).

the entire scope of the conspiracy is admissible against each co-conspirator. *United States v. Nersesian*, 824 F.2d 1294, 1304 (2d Cir. 1987).

**2.  Counts 4 through 8**

Counts 4 though 8 of the superseding indictment charges defendants with possession with the intent to distribute and distribution and aiding and abetting the distribution of marijuana.  The elements of possession with intent to distribute and distribution of a controlled substance are as follows:

First, that the defendant possessed with intent to distribute or distributed marijuana.

Second, that the defendant knew it was marijuana he possessed.


**IV. Legal Issues**

**1.  Audio Recordings and Transcripts**

**A.  General**

As described above, the government intends to offer consensually recorded push-to-talk phone calls between the courier and Dinelle and Woods in seizure #4, and between the couriers and Dinelle in seizure #7, above. Recordings of a defendant's conversations are direct evidence of the conversations, and are admissible against the defendant under Federal Rule of Evidence 801(d)(2).  Further, such admissions are not hearsay.  Fed. R. Evid. 801(d).  Moreover, statements by others in recorded conversations are admissible against the defendants where such statements are made by a co-conspirator during the course and in furtherance of the conspiracy. Fed. R. Evid. 801(d)(2).  Such statements may also be admissible as adoptive admissions.  *Id.* Most, if not all, of the intercepted conversations are not hearsay at all but the verbal acts of the charged crimes.  Further, a statement made in furtherance of the conspiracy need not be made to

a co-conspirator to be admissible.  *United States v. James*, 712 F.3d 79, 106 (2d Cir. 2013), cert. denied, 134 S.Ct. 2660 (2014).

Audio recordings are independently admissible even where one or more parties to the conversation also testifies, *Nixon v. United States*, 487 F.2d 700 (D.C. Cir. 1973); *United States v. Bonanno*, 487 F.2d 654, 659-60 (2d Cir. 1973), based upon a showing of authenticity, accuracy, and relevance.  *United States v. Fuentes*, 563 F.2d 527, 532 (2d Cir. 1977); *United States v. Knohl*, 379 F.2d 427, 440 (2d Cir. 1967).  The decisions of the Second Circuit "reveal a clear preference for the admission of recordings notwithstanding some ambiguity or inaudibility, as long as the recordings are probative."  *United States v. Arango-Correa*, 851 F.2d 54, 58 (2d Cir. 1988).

### B.  Authentication

To properly authenticate or identify an item of evidence, the offering party must produce sufficient evidence "that the item is what the proponent claims it is."  Fed. R. Evid. 901.  "The bar for authentication is not particularly high" and evidence is properly authenticated if a reasonable juror could "find in favor of authenticity."  *United States v. Gagliardi*, 506 F.3d 140, 151 (2d Cir. 2007); *United States v. Hamilton*, 334 F.3d 170, 186 (2d Cir. 2003).  Such evidence may be entirely circumstantial and "the proponent is not required to 'rule out all possibilities inconsistent with authenticity.'"  *United States v. Tin Yat Chin*, 371 F.3d 31, 37 (2d Cir. 2004) (quoting *United States v. Pluta*, 176 F.3d 43, 49 (2d Cir. 1999)).  Authentication is an issue of admissibility, leaving the issue of the overall reliability of the evidence to the jury.

Authentication of telephone calls and audio recordings may be accomplished in a variety of ways.  *United States v. Dhinsa*, 243 F.3d 635, 658 (2d Cir. 2001) (noting that authentication "need not fall into any set pattern").  The proof may be direct or circumstantial.  *United States v.*

*Vayner*, 769 F.3d 125, 130 (2d Cir. 2014).   In general, an audio recording is admissible in evidence if the proponent establishes the identity of the speaker.   *Dhinsa*, 243 F.3d at 659 (quotation omitted) (noting that a mere assertion of identity by the speaker is usually not in and of itself sufficient for authentication).   Testimony from someone familiar with the caller's voice is sufficient.   *Id.*; Fed. R. Evid. 901, ex. 5 (noting that aural voice identification does not require expert testimony); *United States v. Tropeano*, 252 F.3d 653, 661 (2d Cir. 2001) (noting identification could be from a participant on the recording or an individual that heard the conversations at the time they were made such as a law enforcement officer).

Authentication may be established through "the similarity between what was discussed by the speakers and what each subsequently did."   *Dhinsa*, 243 F.3d at 659 (quotation omitted).   The identity of the speaker may also be demonstrated by "virtue of its disclosing knowledge of facts known peculiarly to him."   *Dhinsa*, 243 F.3d at 659.   *See also United States v. Fuentes*, 563 F.2d 527, 531-32 (2d Cir. 1977) (holding that there is "no requirement that the tapes be put in evidence through the person wearing the recorder or, for that matter, through a contemporaneous witness to the recorded conversations").

The government anticipates authenticating the recorded conversations in one or more of the ways identified above.

### C.  Transcripts

In order to aid the jury, the Government may offer transcripts of the audio recordings. *United States v. Byrant*, 480 F.2d 785, 788-90 (2d Cir. 1973).   Additionally, while there may be inaudible portions of the audio recordings, the recording is admissible so long as the inaudible portions of the recordings are not so severe that they render the recordings untrustworthy.   *Id.*

### D.  Email Conversations

10

Electronic messages may also be authenticated in several ways, although Fed. R. Evid. 901 does not provide any specific rule with regard to text messages. *United States v. Sterlin*, 466 Fed. Appx. 792, 797 (11th Cir. 2012). Evidence that an electronic message was obtained through a process or system that produces an accurate result is sufficient foundation under Fed. R. Evid. 901(a). Like telephone conversations, electronic messaging may be authenticated through similarities between the content of the message and actions of parties involved, *Sterlin*, 466 Fed. Appx. at 797, or when the content of the electronic message contains information particular to the defendant. *See United States v. Fluker*, 698 F.3d 988, 1000 (7th Cir. 2012) (holding that emails contained information about bank accounts and housing programs that were known to the defendant). Additionally, evidence that a particular person was using the telephone that generated the messages is also sufficient. *See United States v. Lundy*, 676 F.3d 444, 454 (5th Cir. 2012) (evidence that defendant was using phone at the time of his arrest was sufficient to authenticate text messages from that phone).

Here, CW #9 is expected to testify regarding his own email communications with Woods.

## 2. Hearsay Testimony

### A. Defendants' Admissions

The government intends to offer evidence of statements the defendants made during recorded telephone calls. For the reasons stated above, these are not hearsay.

### B. Co-conspirators' Statements

The government anticipates offering evidence of conversations between co-conspirators during the course of the conspiracy.

Under Federal Rule of Evidence 801(d)(2)(E), the government may offer co-conspirators' statements made "during the course and in furtherance of the conspiracy" provided the necessary

pre-requisites are met.  *See Bourjaily v. United States*, 483 U.S. 171 (1987); *United States v. Maldonado-Rivera*, 922 F.2d 934, 962 (2d Cir. 1990).  The government must demonstrate by a preponderance of the evidence that (1) a conspiracy existed; (2) the declarant and defendant participated in the conspiracy; (3) the conspiracy was in existence when the statement was made; and (4) the statement was made in furtherance of the conspiracy.  *See Bourjaily*, 483 U.S. 171; *United States v. Diaz*, 176 F.3d 52, 82 (2d Cir. 1999).  *Crawford v. Washington*, 541 U.S. 36 (2004), has not affected this analysis because "the Supreme Court has indicated that statements in furtherance of a conspiracy are non-testimonial for purposes of the Confrontation Clause, and are therefore not covered by its protections."  *United States v. Shyne*, 617 F.3d 103, 108 (2d Cir. 2010).

Statements in furtherance of a conspiracy include statements among co-conspirators to inform one another of the progress or status of the conspiracy or serve to foster trust and cohesiveness between and among the co-conspirators.  *United States v. Orena*, 32 F.3d 704, 713 (2d Cir. 1994) (citation omitted).  Statements may provide information, reassurances, seek assistance or help to promote or carry out criminal activity.  *United States v. Rivera*, 22 F.3d 430, 436 (2d Cir. 1994); United States v. Tracy, 12 F.3d 1186 (2d Cir. 1993).

Statements of co-conspirators are admissible against a defendant even where the co-conspirators are not also defendants at the trial.  *United States v. Celaya-Garcia*, 583 F.2d 210 (5th Cir. 1978).  A co-conspirator's statements could themselves be probative of the existence of a conspiracy and the participation of both the defendant and the declarant in the conspiracy. *Bourjaily*, 483 U.S. at 180 (out of court statements that co-conspirator had a "friend" who had agreed to buy cocaine, and who would meet informant and take possession of drugs,

corroborated by defendant's appearance at appointed place, established existence of conspiracy and defendant's participation, and that defendant was "friend" mentioned by co-conspirator).

### 3. Procedures Governing the Forfeiture Phase of the Trial

The forfeiture issues will not be considered until and unless the jury returns a guilty verdict as to one or more of the counts giving rise to the forfeiture. *See* Rule 32.2(b)(1). In that event, the Court must determine what property is subject to forfeiture. Rule 32.2(b)(1)(A). The Court's determination may be based on evidence already in the record and on any additional evidence or information submitted by the parties. Rule 32.2(b)(1)(B). The Rules of Evidence do not apply in the forfeiture phase of the trial. *See United States v. Ali*, 619 F.3d 713, 720 (7th Cir. 2010) (because forfeiture is part of sentencing, less stringent evidentiary standards apply in the forfeiture phase of the trial; the evidence need only be "reliable"); *United States v. Capoccia*, 503 F.3d 103, 109 (2d Cir. 2007) (Rule 32.2(b)(1) allows the court to consider "evidence or information," making it clear that the court may consider hearsay; this is consistent with forfeiture being part of the sentencing process where hearsay is admissible).

The government's burden is to establish the forfeitability of the property – here, a money judgment for $45,000,000 -- by a preponderance of the evidence. *See United States v. Martin*, 662 F.3d 301, 307 (4th Cir. 2011) ("the government must establish a nexus between the property for which it is seeking forfeiture and the crime by a preponderance of the evidence"); *United States v. Bellomo*, 176 F.3d 580, 595 (2d Cir. 1999) (because forfeiture is part of sentencing, and fact-finding at sentencing is established by a preponderance of the evidence, the preponderance standard applies to criminal forfeiture); *see also United States v. Gaskin*, 354 F.3d 438, 461-62 (2d Cir. 2004) (following Bellomo).

### 4. Chain of Custody

An uninterrupted chain of custody is not a prerequisite to admissibility of an exhibit. *United States v. Olson*, 846 F.2d 1103, 1116 (7th Cir. 1988).  Gaps in the chain go to the weight of the evidence, not its admissibility.  *United States v. Morrison*, 153 F.3d 34, 57 (2d Cir. 1998); *United States v. Hon*, 904 F.2d 803, 809-810 (2d Cir. 1990).  "If the trial judge is satisfied that in reasonable probability the evidence has not been altered in any material respect, he may permit its introduction."   *Olson*, 846 F.2d at 1116 (quotation omitted); *see also United States v. Hemmings*, 482 Fed. Appx. 640, 643-44 (2d Cir. 2012) (holding it was not abuse of discretion to admit drugs into where the government did not call the confidential informant who handled drugs as part of the chain of custody and noting that an alleged break in chain of custody for crack cocaine went to weight of evidence, not its admissibility).

"Establishing a chain of custody is one form of proof sufficient to support a finding that the matter in question is what its proponent claims."  *United States v. Mendel*, 746 F.2d 155, 167 (2d Cir. 1984); *United States v. Casamento*, 887 F.2d 1141, 1188 (2d Cir 1989).

Proof of the connection of an exhibit to the defendants may be made by circumstantial evidence.  *United States v. Mendel*, 746 F.2d at 167; *United States v. Natale*, 526 F.2d 1160, 1173 (2d Cir. 1975).

## 5.  Witness Cooperation

Four of the government's trial witnesses have entered into a plea/cooperation agreement which set forth, among other things, their obligation to cooperate with the government and what will happen should he break the agreement.

The Second Circuit has allowed the government to develop the circumstances surrounding a witness's cooperation, or other matter damaging to his credibility, during direct examination.  *United States v. Cosentino*, 844 F.2d 30, 33 (2d Cir. 1988).  This exception to the

rule prohibiting a party from impeaching his own witness, serves to avoid the inference that the

government is attempting to conceal evidence of a witness's bias from the jury.  Judge Oakes in

*United States v. Borello*, 766 F.2d 46, 57 (2d Cir. 1985) and Judge Mulligan in *United States v.*

*Edwards*, 631 F.2d 1049, 1052 (2d Cir. 1980) have explained this rule:

> The rule of *Arroyo-Angulo* and the doctrine enunciated in *Singh* indicate that the
> Government may not introduce the entire cooperation agreement on direct
> examination of its witness since the witness' credibility has not been attacked and
> the entire cooperation agreement bolsters more than it impeaches.  . . .  However,
> the elicitation of the fact of the agreement and the witness' understanding of it, as
> a motivation for the witness to testify for the Government, should be permitted on
> direct examination in order to anticipate cross-examination by the defendant
> which might give the jury the unjustified impression that the Government was
> concealing this relevant fact.

*Id.*  What is important, as *Edwards* recognized, is that although the prosecutor should not offer a

written cooperation agreement into evidence during direct examination, it is permissible for the

prosecutor to both inquire as to the fact that a cooperation agreement has been signed, and permit

the witness to identify this agreement and to explain his understanding of its terms.  *Edwards*,

631 F.2d at 1052.  This procedure, as *Edwards* says, avoids having "the jury . . . learn at that

time that the agreement was revocable if the witness perjured himself, that upon such perjury the

witness might be subject to prosecution for any and all crimes, and anything the witness had

previously said could be held against him."  *Id.*  Thus, the allowed or admissible witness' direct

testimony merely concerns his or her motive for cooperating with the Government.

### 6.  Expert Testimony

#### A.  Forensic Chemists

The United States anticipates it will call several witnesses in its case-in-chief who are

qualified forensic chemists. Each will be questioned as to the marijuana they examined which

was seized on various dates during the Woods DTO investigation. The forensic chemists are

expected to testify that the green leafy substance seized on those dates is marijuana.  The forensic chemists are expected to further as the their qualifications to test a substance submitted to their respective labs for the presence or absence of certain controlled substances by means of quantitative and qualitative analysis.

Federal Rule of Evidence 702 governs the admissibility of expert witness testimony, providing:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.  A trial judge has broad discretion to admit or exclude expert testimony under this rule.  *United States v. Aminy*, 15 F.3d 258, 261 (2d Cir. 1994); *United States v. Tutino*, 883 F.2d 1125, 1134 (2d Cir. 1989); *United States v. Diaz*, 878 F.2d 608, 616 (2d Cir. 1989).

A judge's determination to admit such evidence will be overturned only if "manifestly erroneous" or an "abuse of discretion."  *General Electric Co. v. Joiner*, 522 U.S. 136, 142 (1997); *Tutino*, 883 F.2d at 1134.

The Second Circuit has found expert testimony, while not binding, is helpful to jurors and admissible on a broad range of criminal conduct.  Specifically, the court has approved expert testimony concerning the analysis of drugs seized.  *See United States v. Abdulle*, 564 F.3d 119, 122 & 126 (2d Cir. 2009) (noting a DEA chemist testified on the composition at trial stating it was a controlled substance); *United States v. Mongo*, 586 Fed.Appx. 785 (2d Cir. 2014) (unpublished) (upholding admission of drugs seized that was offered with chemist testimony).