IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------
UNITED STATES OF AMERICA

                  v.

**GAETAN DINELLE**,

                  Defendant.

-------------------------------------------------------------------

Crim. No. 5:08-CR-676-002 (NAM)
(Hon. Norman A. Mordue)

## **DEFENDANT DINELLE'S SENTENCING MEMORANDUM**

**A.    THE OFFENSE**

On August 5, 2015, Gaetan Dinelle was found guilty after trial of Counts 1, 2, 3 and 9 of First Superseding Indictment 08-CR-676.

Count One charged that he conspired with others to knowingly and intentionally distribute and possess with intent to distribute marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), 841(b)(1)(B) and 846, and that he aided and abetted the conspiracy in violation of Title 18, United States Code, Section 2. The Count alleged that between April of 2005 and February of 2008 he conspired to possess with intent to distribute and to distribute more than 1000 kilograms of marijuana.

Count Two charged that between April of 2005 and February of 2008 he knowingly and intentionally conspired with others to import marijuana, a Schedule I controlled substance, into the United States from a place outside the United States, to wit, Canada, in violation of Title 21, United States Code, Section 952 and 963, and that he aided and abetted the conspiracy in violation of Title 18, United States Code, Section 2. The conviction involved more than 1000 kilograms of

1

marijuana, thereby subjecting him to the penalty provisions of Title 21, United States Code, Section 960(a)(1) and (b)(1)(G).

Count Three charged that between April of 2005 and February of 2008 he knowingly and intentionally conspired with others to distribute marijuana, a Schedule I controlled substance, intending and knowing that such substance would be unlawfully imported into the United States, in violation of Title 21, United States Code, Sections 959 and 960(a) and 963. The conviction involved more than 1000 kilograms of marijuana, thereby subjecting him to the penalty provisions of Title 21, United States Code, Section 960(b)(1)(G).

Count Nine charged that between April of 2005 and February of 2008 he and Michael Woods knowingly and intentionally engaged in a continuing criminal enterprise in that they violated Title 21, United States Code, Sections 841, 843(b), 846, 952, 959, 960, 963 and 848, which violations included the violations alleged in Count One, Count Two and Count Three, in concert with at least five other persons with respect to whom Mr. Dinelle and Mr. Woods were organizers, supervisors or managers, from which violations the defendants obtained substantial income and resources. It was further alleged that they were principal administrators, organizers and leaders in a continuing criminal enterprise which received $10 million dollars in gross receipts in any twelve month period of the existence of the enterprise to import and distribute marijuana, and that they were thus subject to the enhanced penalty provisions of Title 21, United States Code, Section 848(a) and (b).

Mr. Dinelle was found guilty of several of the alleged Overt Acts, to wit: 1, 3, 6-9, 11, 14, 18, 20, 23 and 24.

Counts Four through Eight inclusive were dismissed upon motion by the Government.

There was also a forfeiture allegation addressed to the proceeds received during the course of the alleged activity by the defendants which was removed upon motion of the Government.

B.  **OFFENSE CONDUCT**

The offense conduct as set forth in the Presentence Investigation Report is, of course, contested by the defendant. He has maintained his innocence of any charges and denies that he committed these crimes.

He has also submitted objections to the Presentence Investigation Report in that he did not smuggle couriers Derrick Martin and Bryce Cummings into the United States from Canada. He denies that he ever brought anyone over the border into the United States illegally.

Mr. Dinelle has also denied the factual allegations set forth in the trial testimony of the witnesses Michael Harris and Debbie Francis as such testimony may apply to him. He denies responsibility for the quantities of marijuana and the moneys it is claimed were involved in the alleged Counts of the indictment.

C.  **BASE OFFENSE LEVEL**

Although he denies commission of the crimes charged in the indictment and has declined to discuss the case or the sentencing guidelines with me further, it would appear that the application of the 2014 edition of the Guidelines Manual and the guidelines as set forth in the Presentence Investigation Report may be accurately applied for one convicted of the offenses alleged in this case.

D.  **SPECIAL OFFENSE CHARACTERISTIC**

The defendant agrees that there are no Specific Offense Characteristics that apply.

3

E.    **ADJUSTMENT FOR ROLE IN THE OFFENSE**

The defendant may agree that there are no such adjustments that apply for one convicted of the offenses in this indictment.

F.    **ADJUSTMENT FOR OBSTRUCTION OF JUSTICE**

The defendant agrees with the Presentence Investigation Report that this adjustment does not apply.

G.    **ADJUSTMENT FOR ACCEPTANCE OF RESPONSIBILITY**

The defendant agrees that he has continued to deny involvement in this case, continues to deny the allegations against him and declines to provide any further statement regarding the allegations of the indictment.

H.    **CRIMINAL HISTORY CATEGORY**

The Presentence Investigation Report concludes correctly that the defendant's criminal history point total is 0 pursuant to U.S.S.G. §4A1.1. This would establish a Criminal History Category of I according to the Sentencing Table in Chapter 5, Part A.

I.    **OFFENDER CHARACTERISTICS**

I do not believe that Mr. Dinelle objects to the offender characteristics as set forth in the Presentence Investigation Report.

J.    **RECOMMENDATION FOR SENTENCING - NON-GUIDELINES SENTENCE**

The defendant respectfully requests that this Court impose a non-guideline sentence that will be "sufficient, but not greater than necessary" to fulfill the statutory requirements of

sentencing as outlined in 18 U.S.C. § 3553(a).  The defendant requests that the court impose a non-guidelines sentence below the suggested range, one which the court may consider to be mandatory in this case.  Mr. Dinelle may want to apply for a treaty transfer of his sentence so that he may be transferred to Canada to serve his time in accordance with the applicable guidelines in his country of citizenship.  Such a transfer may permit him to rejoin his family sooner so that he may assist in providing for his family.

The Supreme Court in Gall v. United States, 128 S.Ct. 586 (2007), rejected mindless uniformity and recognized that a "deferential abuse-of-discretion standard could successfully balance the need to 'reduce unjustified disparities' across the Nation and 'consider every convicted person as an individual.' " Id. At 598 n.8

Since United States v. Booker, 543 U.S. 220 (2005), the Sentencing Guidelines are advisory and the district courts may impose sentences that are "reasonable" after considering all of the factors set forth in 18 U.S.C. §3553(a).  In Rita v. United States, 127 S. Ct. 2456 (2007), the Supreme Court stated that "it is fair to assume that the Guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve §3553(a)'s objectives." Id., at 2464-65.

The guidelines are not only not mandatory, they are not to be presumed reasonable.  U.S. v. Nelson, 129 S.Ct. 890 (2009).  The guidelines are a starting point or benchmark for determination of a reasonable sentence.  A district judge may not assume that a guidelines sentence is reasonable, but must make an individualized assessment based on the facts of the case.  (Gall, at 7).

A sentencing court, while having an obligation to consider the applicable advisory Guidelines range, need not "precisely identify" the factors set forth in 18 U.S.C. §3553(a) or the arguments "bearing on the implementation of those factors." United States v. Fernandez, 443 F.3d 19, 29 (2nd Cir. 2006).  "Consideration of the § 3553(a) factors is not a cut-and-dried process of factfinding and calculation; instead, a district judge must contemplate the interplay among the

5

many facts in the record and the statutory guideposts." <u>Fernandez</u>, at 29.

In examining the court's flexibility to tailor sentences for each individual defendant, the Court in <u>United States v. Jones</u>, 460 F.3d 191, 195 (2nd Cir. 2006) stated:

> "Although the sentencing judge is obliged to consider all of the sentencing factors outlined in section 3553(a), the judge is not prohibited from including in that consideration the judge's own sense of what is a fair and just sentence under all the circumstances. That is the historic role of sentencing judges, and it may continue to be exercised, subject to the reviewing court's ultimate authority to reject any sentence that exceeds the bounds of reasonableness."

The goal in post-*Booker* sentencing is "that the resulting sentences will continue to substantially reduce unwarranted disparities while now achieving somewhat more individualized justice." <u>United States v. Crosby</u>, 397 F.3d 103, at 114.

Mr. Dinelle is currently 42 years old. His parents divorced when he was twelve years old under circumstances that were traumatic for such a young boy. His mother suffered from depression while his father was not capable of taking care of the young boy. He lived with his sisters on and off over the years under unstable circumstances.

While he has never married, he has a daughter, age 3, who lives with her mother in Cornwall, Ontario. The mother is now engaged to marry another man. He also has a son, age 11, who resides with a different mother, also in Cornwall, Ontario. He has provided for his children's support when he can in the past and would like to return to Canada as soon as possible to resume his relationships with his children and continue his financial and emotional support.

Mr. Dinelle attended the Cornwall Collegiate Vocational School in Cornwall through the tenth grade when he left school to support himself. While he has attended school further, he has yet to obtain his degree, also a future goal for him.

Gaetan has been very active in a variety of businesses through the years. Between 1993 and 1999, he manufactured racing seats for automobiles with Kirkey Racing Fabrications in Cornwall

6

and is familiar with all aspects of the business.  He was employed as a sewer of upholstery for Ace Upholstery (2000-2002) and has done consulting work in manufacturing.  He was also employed as a manufacturing management consultant for Ultra Shield Race Products in Tyler, Texas, in 2001.  Thereafter, from 2002 to 2008, he owned and operated Ace Racing Products in Cornwall, Ontario, where he manufactured racing fire suits and safety equipment for race cars.  Most recently, between 2008 and 2013, he owned and operated two businesses in the sex industry, Bedtime Products and Sensual Expressions, where he was a wholesaler to stores in Canada.  He has many talents in the manufacturing and marketing areas of the multiple businesses in which he has been engaged.  If his incarceration and supervision is transferred to Canada, he may one day be a more contributing member of the community.

       The problem he faces is the mandatory nature of the sentencing provisions in the law.  The defendant requests that this court consider that such provisions mandate a sentence that is harsh and excessive under the circumstances of this case.  Taking into consideration the current climate and culture of the community regarding the possession and distribution of marijuana, a mandatory life sentence is especially severe and cruel.

       Marijuana use and distribution has been legalized in some states within the United States.  The experience thus far has not indicated any harm to the communities involved.  In fact, governments are regulating and taxing the legal sale and distribution of marijuana creating millions of dollars for the improvement of education and other services in those states.  More states are permitting personal possession and use of marijuana by their citizens.  In New York, although possession and use of marijuana has not been approved yet for the general community, medical use of marijuana has been recognized and there are now provisions in the law for its use for medicinal purposes.  It is projected that there will be a continuing easing of the restrictions that have heretofore applied to marijuana use and possession throughout our country.  The current federal laws will one day be looked at in the same way as the Rockefeller drug laws in New York or the outdated Draconian laws of other states which permitted courts to impose life sentences for

possession of small amounts of marijuana and other substances. I submit that a mandatory life sentence in this case is unduly harsh and severe and not consistent with fairness and the need to deter illegal activity in our community.

Gaetan is a hard worker who can return to a productive life in Canada and support his family. It is respectfully submitted that this court may fashion a sentence that will best serve the interests of justice without the imposition of a life sentence. The defendant respectfully requests that this Court impose a fair sentence under all of the circumstances giving appropriate consideration to all of the sentencing factors set forth in 18 U.S.C. §3553(a).

December 21, 2015

                Respectfully submitted,

                s/ Thomas W. Ryan

                THOMAS W. RYAN
                Attorney for **Gaetan Dinelle**
                1200 Hills Building
                217 Montgomery Street
                Syracuse, New York 13202
                (315) 476-0781
                USDC# 102315